## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN DICKERSON, ROBERT HESTER, NANCY ROBERTS, KATIE EVANS MOSS and RICHARD SANCHEZ, on behalf of themselves and all others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| | ) Case: 1:15-CV-01105 (CCC) |
| vs. | ) ) |
| YORK INTERNATIONAL CORPORATION and JOHNSON CONTROLS INC., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

## I.     INTRODUCTION

Plaintiffs respectfully submit this memorandum of law in support of their Motion for Preliminary Approval of the Settlement Agreement ("Settlement Agreement" or "Settlement") they have reached with Defendants York International Corporation and Johnson Controls Inc. (together with Johnson Controls International plc hereinafter collectively, "JCI" or "Defendants").  To facilitate the Settlement, Plaintiffs also ask the Court to provisionally certify a settlement class (the "Settlement Class"), appoint Plaintiffs as the Settlement Class representatives, appoint Interim Class Counsel Shanon Carson of Berger &

Montague P.C., Gregory Coleman of Greg Coleman Law, P.C., and Jonathan Shub of Kohn, Swift & Graf, P.C. as Class Counsel, authorize dissemination and publication of notice to the Settlement Class Members, and schedule a Final Approval Hearing.

This litigation concerns uncoated copper evaporator coils and copper condenser coils (collectively, "Copper Coils" or "Coils") manufactured and sold by JCI[1] and installed in Settlement Class Members' air conditioning or heat pump systems. On behalf of a proposed national class and several state law subclasses, Plaintiffs allege that the Copper Coils are manufactured from material (*i.e.*, uncoated copper) that, within the HVAC industry, is well-known to be prone to formicary corrosion, pitting corrosion, and other defects that result in leakage of refrigerant under normal usage when used as anticipated in residential environments. JCI denies Plaintiffs' claims and allegations.

After considerable discussions, negotiations, mediation sessions, information exchanges and discovery, Plaintiffs and JCI have entered into the Settlement Agreement to resolve the claims of Plaintiffs and the Settlement Class. As Plaintiffs investigated their case, they have recognized that there are potential obstacles to certification of a litigation class and achieving success on the merits,

---

[1] JCI manufactures and distributes Copper Coils under the brand names York, Fraser-Johnson, Luxaire, Coleman, Evcon, Guardian, Champion and Dayton.

were this case to be tried and subject to appeals, including arguments that Defendants have raised regarding proof, causation, and damages. Although Plaintiffs do not view these obstacles as insurmountable, the Settlement provides nationwide class relief proportionate to the strength and weaknesses of their alleged claims.

The Settlement provides all Settlement Class Members with immediate relief, without having to try their claims on an individual basis. Specifically, the Settlement provides for Class Members to obtain rebates, cash reimbursements and/or a new aluminum Coil for Copper Coil leaks that have occurred in the past or that may occur in the future.[2] Dispensing with the requirement to prove that a Coil leak was caused by the defect Plaintiffs allege, which could be a costly undertaking, the Settlement: (a) defrays part of the costs of required maintenance or service of Settlement Class Members' air-conditioning systems; and (b) provides for reimbursement for labor and refrigerant charges to Settlement Class Members who have experienced multiple Coil failures.

The benefits made available to Settlement Class Members through the Settlement include: (a) a one-time $75 service rebate to help defray the cost of installation of a first replacement coil or future service or maintenance on the

---

[2] A copy of the Settlement Agreement and its Exhibits is attached as Exhibit 1 hereto. Exhibits to the Settlement Agreement that are referenced herein are identified by their Settlement Agreement exhibit number (*e.g.*, SA Ex. [ ]).

system; (b) a premium aluminum replacement Coil for Coil failures after preliminary approval of the Settlement; and/or (3) reimbursement for labor and refrigerant charges for Settlement Class Members who have experienced multiple failures, up to $1,100.00 per Settlement Class Member.

These significant benefits, which go beyond Defendants' current warranty, are commensurate with the merits of and challenges to Plaintiffs' claims and thus the Settlement is adequate, fair and reasonable. In fact, on December 9, 2015, the United States District Court for the Northern District of Illinois recently approved a class action settlement of nearly-identical claims brought against Lennox Industries, Inc. *See Thomas, et al. v. Lennox Indust. Inc.*, No 1:13-cv-07747 (N.D. Ill.), Dkt. No. 112. The structure of the court-approved *Lennox* settlement and its benefits for the class members in that case are similar to the structure and benefits of the Settlement proposed by the Parties for approval here. *Id.* Accordingly, Plaintiffs respectfully submit that preliminary approval of the Settlement and provisional certification of the Settlement Class is appropriate.

## II.  BACKGROUND

### A.  Copper Coils

JCI manufactured and distributed air-conditioning systems that contained copper evaporator coils and copper condenser coils. Plaintiffs allege these coils were defectively designed and/or manufactured from uncoated copper tubing, a

material well-known to be prone to formicary corrosion, pitting corrosion, and other defects leading to the leaking of refrigerant. Corrosion, when combined with normal and expected environmental factors, creates cracks and holes in the tubing, which results in leakage of refrigerant under normal usage, a failure that should not occur during the expected lifespan of the HVAC units and the Copper Coils. In addition, the defective Coils and HVAC system cannot withstand the higher pressure from environmentally friendly refrigerant that is now legally required to be used, further exacerbating the problem.

Formicary corrosion is a phenomenon that affects copper tubing. Aluminum tube coils are not subject to formicary corrosion. Formicary corrosion results from a chemical reaction between copper, oxygen, water, and certain organic acids. Those organic acids derive from volatile organic compounds ("VOCs"), which are emitted from various household products and building materials, including oil based paints, foam insulation, carpeting, wallpaper, vinegar, cosmetics, and cleaning solvents. Formicary corrosion is difficult to detect because the tiny pinholes it produces are not visible to the naked eye. Thus, its presence can only be confirmed through expensive, destructive testing on a Coil after it has been removed from the system. That said, multiple failures in the same home may indicate the possibility of the existence of environmental conditions that create a risk of formicary corrosion.

JCI's manufacturer's limited warranty covers its Copper Coils for five or ten years from the date of installation (ten years if the consumer filled out and returned a form, registering the warranty) ("Original Warranty").  JCI's warranty is a parts only warranty and expressly limits the remedy to repair or replacement of defective parts.  Costs for labor and refrigerant are excluded.  The limited Original Warranty also expressly excludes "[d]amages resulting from use of the product in a corrosive atmosphere" and further excludes all implied warranties and any other express warranties.  Generally, under the Original Warranty, if an uncoated Coil leaks, it is replaced with another uncoated Coil.  However, since 2010, JCI has replaced some leaking Coils with coated copper coils.

### B.  Allegations in the Amended Complaint and Procedural History

On June 5, 2015, Steven Dickerson, Robert Hester, and Nancy Roberts, on behalf of themselves and all others similarly situated, filed the initial complaint in this action.  On August 17, 2015, JCI filed a motion to dismiss the complaint for failure to state a claim.  On September 21, 2015, in response to JCI's motion to dismiss, Steven Dickerson, Robert Hester, Nancy Roberts, Katie Evans Moss, and Richard Sanchez, on behalf of themselves and a putative nationwide class and putative subclasses of purchasers from Louisiana, New Mexico, Tennessee, and Arizona, filed an amended class action complaint in the action against JCI ("Amended Complaint").

The Amended Complaint alleges that JCI's Coils are defective because they are made of uncoated copper and thus are susceptible to premature leakage, including but not limited to formicary corrosion. For an air conditioning system to function properly, leaking Coils must be replaced. Although the manufacturer's limited warranty covers the replacement Coil itself, it does not cover the costs of labor and refrigerant to install the replacement Coil. Thus, due to the defective nature of the Coils, some homeowners may have to replace defective Coils more than once, incurring additional labor and refrigerant costs each time.

Plaintiffs' Amended Complaint further alleges that JCI knew, or had reason to know, of copper's susceptibility to premature failure and that it failed to notify homeowners of the problem or to provide adequate warranty service to its customers. Further, Plaintiffs allege that they did not receive the benefit of their bargain when purchasing their air conditioning system because the defective Coils may require costly repair. Thus, the putative class includes Coil purchasers, even where no leak has yet occurred. The Amended Complaint asserts claims for breach of express and implied warranty (including challenges to the validity of the warranty exclusions for labor), breach of warranty for fitness for ordinary use and redhibitory defects on behalf of Louisiana Coil purchasers, violation of the Magnuson-Moss Warranty Act, unjust enrichment, and violation of the Arizona Consumer Fraud Act, and seeks declaratory and injunctive relief.

On October 5, 2015, JCI filed a motion to dismiss the Amended Complaint. On November 16, 2015, Plaintiffs filed their opposition and JCI filed its reply on December 7, 2015. While the parties were briefing JCI's motion, the Court appointed Shanon Carson of Berger & Montague P.C., Gregory Coleman of Greg Coleman Law, P.C., and Jonathan Shub of Kohn, Swift & Graf, P.C. as Interim Class Counsel.

By Order dated December 22, 2015, the Court granted the parties' Joint Motion to Stay Proceedings for Mediation, which, after additional orders extending that order, stayed these proceedings until July 31, 2016. Since November 2015, the Parties have engaged in serious settlement discussions and alternative dispute resolution ("ADR"), including multiple in-person mediation sessions on December 17, 2015, February 29, 2016, and April 14, 2016 before The Honorable Diane M. Welsh (Ret.). As a part of the mediation process, JCI produced several thousand pages of documents requested by Plaintiffs as well as warranty claims history data concerning the Coils.

Following the third mediation session, and with the ongoing supervision and assistance of Judge Welsh, the Parties reached an understanding on the material terms of settlement, and subsequently notified the Court that they had tentatively agreed to settle this litigation. From then on, the parties have worked diligently to negotiate and prepare the Settlement Agreement and related documents.

### C.    The Parties' Contentions

JCI vigorously denies that the Coils are defective.  JCI contends that Copper Coils have been used safely by the industry for decades and that the material has a proven track record of consistent, reliable performance.  JCI maintains that the majority of the putative class has not and never will experience a Copper Coil leak due to the alleged defects.  JCI calculates that only approximately 1.5% of all Coils it has sold since 2010 have failed for *any* reason, and that fewer than 10% of those failures are believed to have anything to do with formicary corrosion, which JCI further believes is the product of environmental influences and not any "defect" in the equipment itself.  JCI also contends that, given the microscopic nature of formicary corrosion, determining whether any particular leak was caused by formicary corrosion requires destructive cross-sectioning and microscopic analysis by experts.  As a result, JCI contends that Plaintiffs will face significant hurdles attempting to prove their case, especially on a nationwide class basis.

JCI nevertheless wishes to avoid the uncertainties, burden and expense of continued litigation and wishes through the Settlement to put to rest the claims of Plaintiffs and the Settlement Class.

Plaintiffs disagree with JCI and contend that all uncoated copper Coils are defective insofar as they are all susceptible to premature failure due to formicary corrosion, pitting corrosion, or other causes directly related to the use of uncoated

copper in their design and manufacturing. However, Plaintiffs acknowledge that there are obstacles to class certification and success on the merits, including the difficulty of diagnosing formicary corrosion, the difficulty in proving the precise cause of leaks in any given case, and the potential number and significance of individual issues. Accordingly, Plaintiffs believe it is in the best interests of the putative class to settle this litigation on meaningful terms that provide Settlement Class Members with relief proportionate to the risk of experiencing a Coil leak due to the use of uncoated copper, rather than assume the uncertainties of further litigation including class certification, trial, and appeals.

## III.   <u>THE SETTLEMENT</u>

The Settlement provides rebates, cash reimbursements and/or a new aluminum Coil for Settlement Class Members who have Copper Coils that have failed or may fail in the future. As a distinct benefit of the Settlement, JCI will not require homeowners to actually prove that their Coil leaked due to formicary corrosion, pitting corrosion, or other defects related to the use of uncoated copper. Such testing is costly, burdensome, and destructive in nature, and thus would prove unworkable for JCI and the Settlement Class. Instead, Settlement Class Members are eligible for a service rebate after their first Coil failure, *regardless of the cause of the failure*. And, if their Coil failed after the Court preliminarily approves this

Settlement, then they are also eligible for a new *aluminum* Replacement Coil. These are benefits that are not provided for in JCI's limited Original Warranty.

To be eligible for other benefits, including reimbursement for labor and refrigerant charges, the Settlement relies on a proxy for determining which homeowners may have corrosive-environment issues, namely those who experience a repeat failure. Multiple failures in the same home may indicate the possibility of the existence of environmental conditions that create a risk of formicary corrosion.

The Settlement Class includes all individuals and entities in the United States who are the original purchasers of a Copper Coil,[3] purchased on or after January 1, 2008 and prior to the date of the Preliminary Approval Order. The Settlement therefore covers purchases made for nearly nine years.

To receive the Settlement's benefits, a Settlement Class Member must be an Authorized Claimant by virtue of having submitted a timely and valid Claim Form. Each Authorized Claimant will receive information describing the benefits and rights under the Settlement and providing instructions about when and how to obtain and redeem such benefits. A claims-made settlement is appropriate here

---

[3] The Settlement Agreement defines "Copper Coil" as a York, Fraser-Johnson, Luxaire, Coleman, Evcon, Guardian, Champion, or Dayton brand copper evaporator coil or copper condenser coil, purchased separately, as part of a residential air handler, as part of a condensing unit, or as part of a packaged HVAC unit, that was not treated or plated with tin (*i.e.*, uncoated).

because JCI does not sell its products directly to homeowners. As a result, JCI has no way of identifying the Settlement Class Members who have never filed a warranty claim or registered their product. Of course, those Class Members who have filed a warranty claim or registered their product and provided accurate address information will receive direct notice of the Settlement through U.S. first class mail.

As noted above, when a Coil leaks during the warranty period, consumers are entitled only to a free replacement coil under the express terms of JCI's limited Original Warranty. Historically, an uncoated copper Coil has been replaced with another uncoated copper Coil. More recently, JCI has provided some coated copper replacement coils. Also, JCI's limited Original Warranty does not cover the costs of labor or refrigerant. The Settlement provides several additional benefits not available under the existing limited Original Warranty as follows:

(1) $75 Service Rebate. Authorized Claimants who experienced or experience a failure of an original Coil within the Original Warranty period are eligible for a one-time $75 service rebate valid for one year from the date the Service Rebate Certificate is issued to the Authorized Claimant, to be used as payment for routine maintenance performed after the date the rebate is issued. When the rebate certificate is redeemed, it entitles the Settlement Class Member to a $75 check from JCI.

Routine maintenance is strongly recommended under the terms of JCI's limited warranty and helps prevent and identify problems before a Coil fails. Thus, the rebate is intended to promote preventative maintenance and defray part of the costs the Settlement Class Member should already be incurring; it does not encourage additional spending. Moreover, because maintenance or service is performed by independent authorized dealers, JCI will not earn revenue or otherwise gain any benefit when Settlement Class Members obtain service.

(2) <u>Aluminum Replacement Coil</u>. In addition to the $75 Service Rebate, all Authorized Claimants who, after the Court's Preliminary Approval Order, experience a first failure of their Coil(s) during the applicable Original Warranty period, will receive, at no cost, a new aluminum Replacement Coil, which is not susceptible to formicary corrosion.

(3) <u>Reimbursement for Coil Failures after the Coil Failure</u>. Authorized Claimants who have or had more than one coil failure during the applicable Original Warranty period, are eligible to receive reimbursement of their unreimbursed out-of-pocket expenses for parts, labor and refrigerant of up to $550.00 for each replacement; provided, however, that the maximum total that will be paid for all replacements is $1,100.00.

Because the lawsuit concerns allegations of premature failure of purportedly defective uncoated copper Coils, the actual benefits to which a Settlement Class

Member is or may become entitled is keyed to the replacement of one or more Coils. Likewise, the mechanics of the claims submission and administration process, including submission deadlines, is keyed to the dates of Coil failures and will vary among Settlement Class Members. Claims must be submitted by the later of 120 days after the Final Judgment and Order of Dismissal or 120 days after the Settlement Class Member experiences a Coil failure during the Original Warranty period.

Importantly, there is no cap on the number of claims JCI will accept or the amount of money JCI will expend to satisfy all timely and valid claims. It is difficult to predict the number of expected claims for two reasons. First, JCI has no way to know of a Coil failure unless it is reported to JCI, typically by way of a warranty claim, submitted by either the homeowner or the dealer. Second, the Program covers future Coil failures that might occur over the course of the next several years.

JCI has also undertaken to pay the reasonable and necessary costs of the Notice Plan and Claims Administration process. JCI has also agreed not to object to an award of Class Counsel's attorneys' fees and expenses (subject to a cap discussed below).

## IV.    NOTICE AND CLAIMS PROGRAMS

The Notice Plan (Section VI of the Settlement Agreement) will be administered by a Notice Administrator appointed by the Court. Plaintiffs and Defendant jointly move the Court to appoint Angeion Group, a highly qualified and experienced expert in the administration of class action notices as the Notice Administrator. The Claims Administration Plan (Section VII of the Settlement Agreement) will be administered by the Settlement Administrator in connection with its existing warranty program, under the supervision of Class Counsel and the Court.

### A.    Notice Plan

The Notice Plan (Section VI of the Settlement Agreement) calls for several forms of notice to the Settlement Class, intended to maximize the probability of reaching all or substantially all Settlement Class Members. The forms of notice include, but are not limited to:

1.    Direct U.S. first class mail notice using the Notice of Class Action Settlement (SA ¶ 27a) to all persons that JCI and Plaintiffs have identified as falling within the Settlement Class definition and for whom postal addresses may reasonably be obtained. Although JCI does not sell directly to homeowners, it maintains a warranty registration database and warranty claims database that contains

mailing information for approximately 770,000Settlement Class Members.

2.    Emailing a copy of the Notice of Class Action Settlement and Claim Form (SA ¶ 27b) to all persons that Defendants can identify as falling within the definition of the Settlement Class and for which email addresses currently are available to JCI in its customer database or as otherwise specified in the Notice Plan.

3.    Notice by publication in appropriate print or other media using a Summary Notice (SA ¶ 27c).

4.    Online notice through a dedicated Settlement Website, www.jccoppercoilsettlement.com, which will include access to the Notice of Class Action Settlement and other relevant documents. (SA ¶ 27d)

5.    Information about the Settlement disseminated on JCI's HVAC websites. (SA ¶ 27g)

6.    Direct notice through its existing dealer and distributor channels to independent JCI dealers and distributors who sell and service the Coils and, therefore, interface directly with the Settlement Class Members. (SA ¶ 27e)

7.   A press release released through PR Newswire, the language of which shall be approved by JCI and Class Counsel prior to publication, that will be issued on the first day that notice is disseminated by the Settlement Administrator to the Settlement Class Members. (SA ¶ 27f)

8.   Notice to appropriate government officials, in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715. (SA ¶ 27h)

Each form of notice will contain information directing recipients to the Settlement Website and an automated telephonic hotline that will provide information concerning the Settlement.

The Notice Plan calls for Notice to be given to the Settlement Class within 45 days of the Court's entry of a Preliminary Approval Order. No less than seven days prior to the Final Approval Hearing, the Notice Expert will file with the Court a declaration as proof that the required notice was disseminated to the Settlement Class.

The Notice will provide Settlement Class Members with information on how, when and where they may object to the Settlement. The Notice will also provide instructions on how to opt-out of the Settlement, including a deadline for doing so. The Parties propose an objection and opt-out deadline 60 days after the

dissemination of the Notice Plan, which provides Settlement Class Members adequate time to consider the terms of the Settlement and make their decision.

**B.** **Claims Process**

The Claims Administration Plan (Section VII of the Settlement Agreement) provides for a reasonable and customary claims process under the supervision of Class Counsel and the Court. The Settlement Administrator will be responsible for administering all claims under the supervision of the Parties' Counsel, subject to the Court's continuing jurisdiction.

As detailed in the Claims Administration Plan, in order for a Settlement Class Member to receive any benefits under the Settlement, the Settlement Class Member must be an Authorized Claimant by virtue of having submitted a timely and valid Claim Form within the claims period. In particular, Claim Forms must be submitted by the later of 120 days after the Court's Final Judgment and Order of Dismissal or 120 days after the Settlement Class Member's Coil failure.

The Claim Form will describe the benefits and rights under the settlement and the required information and supporting documentation that must be submitted with the Claim Form.

Claim Forms will be made available through several means, including: (1) by making a request through an automated toll-free telephone number established to provide information about the Settlement; (2) by mailing, faxing, or emailing a

request to the Settlement Administrator; and (3) by downloading from the Settlement Website. Settlement Class Members will have the option of either mailing completed Claim Forms (along with supporting documentation), or filling out online versions of these forms and either uploading or mailing, faxing, or emailing any required supporting materials to the Settlement Administrator.

The Settlement Agreement establishes procedures and criteria to protect the due process rights of all Settlement Class Members. Those procedures include specific steps for determining the validity of claims; a process for notifying Settlement Class Members of curable deficiencies and affording them the opportunity to correct errors and omissions; and a process for rejected Claimants to challenge denials of Claims, including through the appointment of an independent Special Master. Submission of a Claim Form will constitute consent to the Court's jurisdiction over the claim and the Claimant, and the Court's decisions on disputed claims will be deemed final and conclusive as to the Settlement Class Members.

## V. <u>ARGUMENT</u>

The Third Circuit has long recognized that there is a "strong presumption in favor of voluntary settlement agreements." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010) (citing *Pennwalt Corp. v. Plough*, 676 F.2d 77, 79-80 (3d Cir. 1982)). "This policy is also evident in the Federal Rules of Civil Procedure and the District Court's Local Rules, which encourage facilitating the settlement of

cases." *Id.* "This presumption is especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Id.* at 595 (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)). "Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Id.* In addition, "the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial." *Id.*

Federal Rule of Civil Procedure 23(e) governs class action settlements. There is a well-accepted procedure and specific criteria for preliminary and final approval of class action settlements. *See Manual for Complex Litigation* (Fourth) (2004) § 21.63 (describing a three-step procedure for approval of class action settlements consisting of preliminary approval, notice and a final hearing).

The Settlement will provide a tangible and valuable recovery to Settlement Class Members and avoid the uncertainties and expense of continued litigation. However, certification of the proposed Class is necessary for Settlement Class Members to receive the benefits of the Settlement. *See In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*, No. 11-md-02284, 2013 WL 504857, at *3 (E.D. Pa. Feb. 12, 2013)). As demonstrated below, preliminary certification

of the Settlement Class and preliminary approval of the Settlement for purposes of giving notice to the Class is wholly warranted here.

### A.    <u>The Court Should Provisionally Certify the Class</u>

"At the preliminary approval stage, the Court may conditionally certify the class for purposes of providing notice [of a proposed settlement]." *In re Imprelis Herbicide*, 2013 WL 504857, at \*3 (citing MANUAL FOR COMPLEX LITIGATION, § 21.632 (4th ed. 2004) ("The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b).")). *Accord In re GMC Pick-Up Truck*, 55 F.3d at 776-78 ("Only when the settlement is about to be finally approved does the court formally certify the class, thus binding the interests of its members by the settlement."); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 2248, 138 L. Ed. 2d 689 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial."). Here, the requirements of Rule 23 are readily met.

Plaintiffs request (and Defendants stipulate) that the Court certify for settlement purposes only, under Federal Rule of Civil Procedure 23(a) and 23(b)(3), a Settlement Class, defined as:

all individuals and entities in the United States who during the time period from January 1, 2008 to ==[Date of Preliminary Approval Order]== purchased an uncoated York, Fraser-Johnson, Luxaire, Coleman, Evcon, Guardian, Champion, or Dayton brand copper evaporator coil or copper condenser coil manufactured and sold by JCI or any of its Affiliates, separately or as part of a split system or packaged residential air handler, condensing unit, or HVAC unit, that is covered by the original limited five year warranty or extended ten year warranty.
.

Excluded from this Settlement Class are (1) the judge to whom this Action is assigned and any member of the judge's immediate family; and (2) the Mediator and any member of her immediate family.

### 1. **The Elements of Rule 23(a) Are Satisfied**

Fed. R. Civ. P. 23(a) requires that the plaintiff demonstrate the following:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

### a) **Numerosity**

"Satisfaction of the numerosity requirement does not require evidence of the exact number or identification of the members of the proposed class." *Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169, 182 (E.D. Pa. 2014). Rather, the proposed class must be so numerous that joinder is impracticable. *Id.* "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the

named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).

JCI states that it has sold over a million Coils during the relevant period. This number significantly exceeds those found sufficient in innumerable other cases and, accordingly, Rule 23(a)(1)'s numerosity requirement is met.

### b) **Commonality**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires a showing of the existence of questions of law or fact common to the class." *Hawk Valley, Inc. v. Taylor*, 301 F.R.D. at 182 ("A common question is one arising from a common nucleus of operative facts."). "Generally, where defendants have engaged in standardized conduct towards members of the proposed class, common questions of law and fact exist." *Id.* "'[T]he commonality standard of Rule 23(a)(2) is not a high bar: it does not require identical claims or facts among class members.'" *Stewart v. Abraham*, 275 F.3d at 227 (quoting C*hiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004)). "'The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'" *Id.* (citing *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)).

Here, common issues for the Settlement Class would include, for example: whether uncoated Copper Coils are susceptible to premature failure; whether uncoated Copper Coils leak and fail because of formicary and pitting corrosion; whether JCI knew or reasonably should have known its uncoated copper coils are susceptible to premature failure; whether JCI disclosed that its Coils prematurely leak and fail; and whether JCI took any measures to mitigate the premature failure risks in its copper Coils. Given that Plaintiffs need only show one common question of law or fact to establish commonality under the rule, *see Stewart v. Abraham*, 275 F.3d at 227, Plaintiffs satisfy the commonality requirement for the Settlement Class.

### c) Typicality

Rule 23(a)(3) requires that the claims of the class representative are "typical of the claims … of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement 'is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531 (3d Cir. 2004) (citation omitted). As the Third Circuit has held, "'[t]he concepts of commonality and typicality are broadly defined and tend to merge.'" *Baby Neal v. Casey*, 43 F.3d at 56 (citation omitted). "In this respect 'the commonality and typicality requirements both seek to ensure that the interests of the absentees will be

adequately represented.'" *Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 498 (E.D. Pa. 2009) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998)). "'[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.'" *Barel v. Bank of Am.*, 255 F.R.D. 393, 398 (E.D. Pa. 2009) (quoting *Stewart v. Abraham*, 275 F.3d at 227).

Here, the claims of Plaintiffs and the Settlement Class all arise out of JCI's practices with respect to the manufacturing and warranty of uncoated Copper Coils. Plaintiffs' legal theories, applicable to each Settlement Class Member, include breaches of express and implied warranties, and they also seek, among other things, a declaration that the Coils are defective. Thus, Plaintiffs' claims are "typical" of those of the Settlement Class.

### d) **Adequacy**

"[T]he adequacy of representation requirement of Rule 23(a)(4) 'considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class.'" *Cosgrove v. Citizens Auto. Fin., Inc.*, No. 09-cv-1095, 2011 WL 3740809, at *5 (E.D. Pa. Aug. 25, 2011) (quoting *In re Community Bank of N. Va.*, 418 F.3d 277, 303 (3d Cir. 2005)). "A class representative is adequate if: (1) the class representative's counsel is competent to conduct a class action; and (2) the class representative's interests are not antagonistic to the class's interests." *In re Ravisent Techs., Inc. Secs. Litig.*, No. 00-cv-1014, 2005 WL 906361, at *5 (E.D. Pa. Apr. 18, 2005) (quoting *In re GMC Pick-Up Truck*, 55 F.3d at 800-01).

In this case, there are no conflicting or antagonistic claims – the Plaintiffs' claims are consistent with those of the Settlement Class. The claims Plaintiffs asserted in the Amended Complaint do not afford any opportunity for preferential treatment, nor do the terms of the Settlement. The Plaintiffs' interests are aligned with those of all absent Settlement Class Members, and all members of the Settlement Class will have an equal opportunity to obtain benefits under the Program, based solely on the existence, number and timing of their Coil failure(s).

Likewise, Interim Class Counsel are adequately representing the interests of the Settlement Class. "Plaintiffs' counsel have invested substantial time and

resources in this case by investigating the underlying facts, researching the applicable law, and negotiating a detailed settlement." *In re AT&T Mobility Data Servs.*, 270 F.R.D. at 344 (*citing Rand*, 926 F.2d at 598-99). Interim Class Counsel have consulted with experts about corrosion in uncoated copper coils and analyzed discovery provided by JCI. Interim Class Counsel also have substantial experience in litigating consumer class actions and other complex commercial cases. In short, Plaintiffs and their counsel have demonstrated that they "are fully capable of litigating this case." *In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200, 218 (M.D. Pa. 2012). Accordingly, the adequacy requirement is satisfied in this case.

### 2. The Requirements of Rule 23(b)(3) Are Met

Once Rule 23(a) is satisfied, Rule 23(b)(3) requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Certification of the Settlement Class is appropriate under Rule 23(b)(3) because the common questions of law and fact predominate over any individual questions, especially those that may arise in the context of the Settlement, and because a class action is the superior method of adjudicating the claims in light of the nature of the relief under the Settlement.

### a) **Predominance**

The Rule 23(b)(3) predominance inquiry "measures whether the class is sufficiently cohesive to warrant certification." *Newton v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 187 (3d Cir. 2001) (citing *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 623 (1997)). "[T]he predominance inquiry focuses a common course of conduct by which the defendant may have injured class members." *Uncoatedl v. Bank of Am.*, 255 F.R.D. at 399 (citing *In re Prudential Ins.*, 148 F.3d at 314).

Here, there are several common questions of law and fact that would predominate over any questions that may affect individual Settlement Class Members. Most notably, questions of whether the Coils are defective, whether JCI knew or should have known that they were defective, and whether JCI failed to disclose to consumers that the Coils are defective for the basis of each Settlement Class Member's claim and dwarf any issue particular to individual class members. Consequently, the Settlement Class is sufficiently cohesive to warrant certification.

### b) **Superiority**

The other requirement of Rule 23(b)(3) that must be satisfied is the superiority requirement (*i.e.*, that a class action suit provides the best way of managing and adjudicating the claims at issue). "The superiority requirement 'asks the court to balance, in terms of fairness and efficiency, the merits of a class

action against those of alternative available methods of adjudication.'" *Good v. Nationwide Credit, Inc*., 314 F.R.D. 141, 154 (E.D. Pa. 2016) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 533-34). "When assessing superiority and '[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, ... for the proposal is that there be no trial.'" *Id.* at *23 (quoting *Amchem Prods., Inc., v. Windsor*, 521 U.S. at 620).

Here, the Settlement provides members of the Settlement Class with prompt, predictable, and certain relief, and contains well-defined administrative procedures to ensure due process. This includes the right of any Settlement Class Members who are dissatisfied with the Settlement to object or to exclude themselves.

The Settlement also would relieve the substantial judicial burdens that would be caused by repeated adjudication of the same issues in thousands of individualized trials against JCI. And because the parties seek to resolve these cases through a settlement, any manageability issues that could have arisen at trial are marginalized. See *Sullivan*, 667 F.3d 273, 302-03 (3d Cir. 2011). Therefore, "class status here is not only the superior means, but probably the only feasible [way]" to provide the Settlement Class relief. *Augustin v. Jablonsky*, 461 F.3d 219, 229 (2d Cir. 2006) (quoting *Tardiff v. Knox County*, 365 F.3d 1, 7 (1st Cir. 2004)).

For all of the foregoing reasons, the Settlement Class should be provisionally certified.

**B.    The Proposed Settlement is Sufficiently Fair, Reasonable and Adequate to Authorize Dissemination of Class Notice**

**1.    Governing Standards**

There is an "overriding public interest in settling class action litigation." *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516,535 (3d Cir. 2004); *accord In re Pet Food Products Liability Litig.,* 629 F.3d 333,351 (3d Cir. 2010); *Ehrheart* v. *Verizon Wireless,* 609 F.3d 590, 593-595 (3d Cir. 2010).  As noted above, the journey to approval of a class action settlement, and thus achieving the public interest, unfolds in three stages.  The first stage requires the parties to obtain the court's preliminary approval of the settlement and authorization to disseminate notice of the settlement to the class members.  In the second stage, notice is disseminated.  In addition, JCI has the obligation under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, to give notice of the settlement to States and Federal Attorneys General.  The third stage, after Settlement Class Members have had an opportunity to object or opt out, has the court conduct a Final Approval Hearing to determine whether or not the settlement is fair, reasonable and adequate.  If the court concludes that it is, then final approval is given.

The parties and the Court in this case are at stage one.  The procedure for disseminating notice to the class and then conducting a hearing to approve the

settlement is well established by courts in the Third Circuit. The *Manual For Complex Litigation (Fourth)* §21.632 (2004), sets forth the traditional framework for the Court's preliminary evaluation of a proposed class action settlement.

> First counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. . .. The Judge must make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms and must direct the preparation of notice of the ... proposed settlement, and the date of the fairness hearing.

*See also Klingensmith v. BP Products North America, Inc*., 2008 WL 4360965, at *5 (W.D. Pa. Sept. 24, 2008); *In re Warfarin Sodium Antitrust Litig*., 212 F.R.D. 231, 254 (D. Del. 2002).

When authorizing the dissemination of notice, a court does not conduct a "definitive proceeding on the fairness of the proposed settlement, and the judge must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable and adequate." *In re Mid-Atlantic Toyota Antitrust Litig*., 564 F. Supp. 1379, 1384 (D. Md. 1983). That determination must await the final hearing where the fairness, reasonableness and adequacy of the settlement are assessed under the factors set forth in *Girsh v.*

*Jepson*, 521 F.2d 153 (3d Cir. 1975).[4] *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003).

## 2.    <u>The Settlement is Worthy of Preliminary Approval</u>

At the preliminary approval stage,

> the Court is required to determine only whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval.

*Mehling,* 246 F.R.D. at 472 (internal citations omitted) (quoting *Thomas* v. *NCO Fin. Sys.,* 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002)).   Preliminary approval "is granted unless a proposed settlement is obviously deficient."  *Jones* v. *Commerce Bancorp, Inc.,* 2007 WL 2085357, at *2 (D.N.J. July 16, 2007); *accord Gates* v. *Rohm* & *Haas Co.,* 248 F.R.D. 434,438 (E.D. Pa. 2008).  Here, there are neither grounds to doubt the fairness of the settlement, nor any obvious

---

[4] The *Girsh* factors that a court considers on a motion for final approval of a class settlement as "fair, reasonable and adequate" include the following: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; and (9) the range of reasonableness of the settlement in light of all attendant risks of litigation. *Girsh*, 521 F.2d at 157.

deficiencies.

The Settlement certainly "falls within the range of possible approval" because its terms are substantially similar to those already approved in a case alleging the same defect in coils manufactured by a different air conditioning system manufacturer. As noted above, on December 9, 2015, the United States District Court for the Northern District of Illinois approved a class action settlement concerning copper coils manufactured and sold by Lennox Industries, Inc. *See Thomas, et al. v. Lennox Indust. Inc.*, No 1:13-cv-07747 (N.D. Ill.), Dkt. No. 112.

In addition, settlements proposed by experienced counsel and which result from arm's-length negotiations are entitled to deference from the Court. *See General Motors*, 55 F.3d at 787-88; *In re Automotive Refinishing Paint Antitrust Litig.,* 2003 WL 23316645, at *6 (E.D. Pa. Sept. 5, 2003); *Petruzzi's, Inc.* v. *Darling-Delaware Co.,* 880 F. Supp. 292, 301 (M.D. Pa. 1995) ("[t]he opinions and recommendation of such experienced counsel are indeed entitled to considerable weight."); *Lake* v. *First Nationwide Bank,* 156 F.R.D. 615, 628 (E.D. Pa. 1994) (giving "due regard to the recommendations of the experienced counsel in this case, who have negotiated this settlement at arms-length and in good faith."). *Fisher Brothers v. Phelps Dodge Industries, Inc.*, 604 F. Supp. 446, 452 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is

entitled to significant weight."). The initial presumption in favor of such settlements reflects courts' understanding that vigorous negotiations between seasoned counsel protects against collusion and advances the fairness concerns of Rule 23(e). Interim Lead Counsel have extensive experience in handling product defect class actions and other complex litigation. They believe the proposed settlement constitutes an excellent result.

The parties' negotiation process supports a finding that the settlement is fair, reasonable and adequate. It is beyond dispute that the Settlement Agreement was the result of extensive and vigorous arm's-length negotiations, conducted by experienced counsel for all parties, and with the assistance of an experienced mediator, Judge Diane Welsh (Ret.). Three separate in-person mediations were conducted by Judge Welsh over a four-month period. In addition, Judge Welsh continued to actively supervise the Parties' progress, and would often involve herself at the Parties' request via telephone and/or email to help resolve issues and keep negotiations moving forward. Further, the parties reached the Settlement only after Plaintiffs received and analyzed comprehensive targeted discovery produced by JCI. In short, nothing in the course of the negotiations or in the substance of the proposed Settlement presents any reason to doubt its fairness.

Nor does the Settlement provide any preferential treatment, undue or otherwise, to one segment of the Settlement Class. All members of the Settlement

Class receive expanded protection and compensation if they have experienced a Coil failure or experience a Coil failure in the future. While certain Settlement Class Members will ultimately be entitled to more valuable benefits from the Settlement than other Settlement Class Members, the differences in benefits is directly related and proportional to the strength of these Settlement Class Members' claims and the damages they incurred. This Settlement also does not unduly favor the Plaintiffs, who will only be requesting modest Service Awards of $2,500 each in recognition of their efforts on behalf of the Settlement Class.

Further, continued litigation would be long, complex and expensive, and a burden to the Court and the parties. *See In re Pet Food Prods. Liab. Litig*., 629 F.3d 333, 350 (3d Cir. 2010); *Benjamin v. Dep't of Pub. Welfare*, 807 F.Supp.2d 201, 207 (M.D. Pa. 2011); *Lake*, 900 F. Supp. 726 (expense and duration of litigation are factors to be considered in evaluating the reasonableness of a settlement); *Weiss v. Mercedes-Benz of N. Am. Inc*., 899 F. Supp. 1297 (D.N.J. 1995) (burden on crowded court dockets to be considered). Continuing this litigation would entail a lengthy and expensive battle, involving several legal and factual issues in dispute. It is reasonable to expect that all such matters would be sharply disputed and vigorously contested, as they were in settlement negotiations. Additionally, JCI would assert various defenses, and a jury trial (assuming the case proceeded beyond pretrial motions) might well turn on class questions of proof

making the outcome of such trial uncertain for both parties. Even after trial was concluded, there would very likely be one or more lengthy appeals. Given this uncertainty, a certain "bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Balancing the benefits provided by the Settlement against the complexities, substantial risk, expense and duration of continued litigation against JCI, Interim Class Counsel firmly believe that the Settlement represents an excellent resolution of this litigation for the Settlement Class. For all of the foregoing reasons, the Settlement warrants the Court's preliminary approval.

### 3.     The Court Should Order Dissemination of Notice

Rule 23 requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also* Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS, § 8.2 at 162-65 (4th ed. 2002). In consultation with one of the nation's preeminent Notice Administrators, Angeion Group, the parties have designed a Notice Plan intended to maximize the reach of a fully informative Notice to as many Settlement Class Members as is practicable given the finite temporal nature of a notice program and the need to balance efficiency and effectiveness so as to maximize the overall

benefits of the Settlement across the widest number of Settlement Class Members. Class Counsel believes that the Notice Plan, in conjunction with the structure of the Settlement, will indeed maximize not only the number of Settlement Class Members who receive notice, but also the number of claims submitted by those Settlement Class Members.

As summarized above and detailed in the Notice Plan and notice documents (SA Exs. A, B and C), as well as in the proposed Order Granting Preliminary Approval, Class Counsel proposes to mail the Notice of Class Action Settlement and Claim Form by first class mail to all persons that can reasonably be identified from JCI's warranty registration and claims data and email a copy of the Notice of Class Action Settlement and Claim Form to all persons that JCI can identify as falling within the definition of the Settlement Class and for which email addresses currently are available to JCI in its customer database. In addition, JCI will disseminate information regarding the Settlement on a Settlement Website, where Settlement Class Members can access documents of interest, as well as through JCI's own websites, which will provide Settlement information and a link to the Settlement Website. This effort will be complemented by an appropriate media campaign, and JCI will also communicate information about the Settlement to its independent dealers. This proposed notice program meets the requirements of due

process because the proposed Notice alerts and informs members of the Settlement Class through means calculated to maximize the number of recipients of Notice.

The contents of the proposed Notice, and the proposed method of its dissemination, comport with Federal Rules of Civil Procedure 23(c)(2) and 23(e), as well as due process. *See generally Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-77 (1974) (due process is satisfied by mailed notice to all class members who reasonably can be identified); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 429 (S.D. Tex. 1999) (mailed notice to all class members whose address was known, and publication notice, satisfied due process and Rule 23).

### 4. Interim Class Counsel Should be Appointed Class Counsel and Plaintiffs as Class Representatives

The Court should also appoint Interim Class Counsel as Class Counsel and the Plaintiffs as Class Representatives. Interim Class Counsel have carefully steered the litigation into a significant and important settlement and the Plaintiffs have worked with Interim Class Counsel to ensure that the Settlement is fair, adequate and reasonable for the entire Settlement Class.

## VI. CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court grant their motion for preliminary approval of the Settlement; provisionally certify, for settlement purposes only, the Settlement Class; appoint Class Representatives and Class Counsel; and authorize dissemination of the Notice Plan to Settlement

Class Members, in the form and manner described above and in accordance with the Notice Plan and other documents submitted as exhibits herewith.  A proposed Preliminary Approval Order is being submitted herewith.

Dated:  November 14, 2016                          Respectfully submitted,


                                                   /s/ Gregory F. Coleman
                                                   Gregory F. Coleman *(by pro hac vice)*
                                                   Lisa A. White *(by pro hac vice)*
                                                   GREG COLEMAN LAW PC
                                                   550 Main Avenue, Suite 600
                                                   Knoxville, Tennessee 37902
                                                   (865) 247-0080 Telephone
                                                   (865) 522-0049 Facsimile
                                                   greg@gregcolemanlaw.com
                                                   lisa@gregcolemanlaw.com

                                                   Shanon J. Carson
                                                   Russell D. Paul
                                                   BERGER & MONTAGUE, P.C.
                                                   1622 Locust Street
                                                   Philadelphia, PA 19109
                                                   Tel:    (215) 772-1500
                                                   Fax:   (215) 772-7620
                                                   scarson@bm.net
                                                   rpaul@bm.net

                                                   Jonathan Shub
                                                   KOHN, SWIFT & GRAF, P.C.
                                                   One South Broad Street, Suite 2100
                                                   Philadelphia, PA 19107
                                                   (215) 238-1700 Telephone
                                                   (215) 238-1968 Facsimile
                                                   jshub@kohnswift.com

                                                   *On behalf of Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document was served by ECF on all known parties on this 14th day of November, 2016.

/s/ Gregory F. Coleman
Gregory F. Coleman